**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| MARY ANN INGRAM, as Executrix of the Estate of ADA ERLE CHURCH and Personal Representative of ADA ERLE CHURCH, Deceased,<br><br>                    Plaintiff,<br><br>vs.<br><br>WYETH, INC. et al.,<br><br>                  Defendants. | Case No.: 2:15-cv-00592-MHT-WC |

**DEFENDANT UPSHER-SMITH LABORATORIES, INC.'S**
**MOTION TO DISMISS AND INCORPORATED MEMORANDUM IN SUPPORT**

{02111451.1/3000-1993}

## **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................1

II. LEGAL STANDARD..........................................................................................................3

III. LAW AND ARGUMENT ...................................................................................................4

    A.  Plaintiff's claims against Upsher-Smith are preempted under *Mensing* and *Bartlett* ....................................................................................................................4

    B.  Plaintiff's allegations of "off-label" promotion do not state a claim......................10

    C.  Plaintiff's undifferentiated allegations against multiple defendants do not satisfy federal pleading standards .........................................................................12

IV. CONCLUSION..................................................................................................................14

Defendant Upsher-Smith Laboratories, Inc. ("Upsher-Smith"), moves this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss with prejudice all of the claims made against Upsher-Smith in Plaintiff's Wrongful Death Complaint (Doc. 9-1), stating as follows:

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Mary Ann Ingram, executrix of the estate of Ada Erle Church ("Plaintiff"), alleges that Ms. Church died on December 26, 2013, in part as a result of using the prescription drug amiodarone. The Complaint was filed on July 7, 2015. Plaintiff has sued numerous manufacturers of amiodarone, including Upsher-Smith. Amiodarone is an FDA-approved, anti-arrhythmic medication.[1] (Wrongful Death Complaint ("Compl.") ¶¶ 49, 66, 106, 112) (Doc. 9-1). Upsher-Smith manufactures and sells generic amiodarone, including under the name Pacerone® (amiodarone HCl) ("Pacerone" or "amiodarone"). Pacerone is a generic version of amiodarone that was approved by FDA in 1998.[2] (*Id.* ¶ 66.) Plaintiff brings claims against Upsher-Smith (and the other pharmaceutical defendants) for wrongful death that sound in negligence, strict liability, fraud, breach of warranty, and violation of unspecified consumer protection laws. On their face, however, these claims do not withstand scrutiny and should be

---

[1] Amiodarone is available only by prescription through a licensed healthcare provider.

[2] Plaintiff acknowledges that Pacerone is a generic drug (*see* Compl. ¶ 3 n.1). Though it has a different name, Pacerone is a generic version of amiodarone that was approved by FDA in 1998 following Upsher-Smith's submission of an Abbreviated New Drug Application ("ANDA"). *See* Search of "Pacerone," Drugs@FDA, http://www.accessdata.fda.gov/scripts/cder/drugsatfda/ (accessed Aug. 12, 2015). The innovator drug on which Pacerone is based, Wyeth's Cordarone®, was approved by FDA under a New Drug Application ("NDA") in 1985. *See* Compl. ¶ 49; Search of "Cordarone," Drugs@FDA, http://www.accessdata.fda.gov/scripts/cder/drugsatfda/ (accessed Aug. 12, 2015). The Court may take judicial notice of information on FDA's website. *See Rounds v. Genzyme Corp.*, 440 F. App'x 753, 754-56 (11th Cir. 2001) (relying upon FDA-approved package inserts to decide motion to dismiss); *Lederman v. Howmedica Osteonics Corp.*, 950 F. Supp. 2d 1246, 1251 (M.D. Fla. 2013) (stating that court may take judicial notice of FDA records "at the pleadings stage"); *Kaiser v. Dupuy Spine, Inc.*, 944 F. Supp. 2d 1187, 1192 n.2 (M.D. Fla. 2013) (taking "judicial notice of public records of the FDA" on a motion to dismiss).

dismissed. Indeed, Judge Inge Prytz Johnson of the Northern District of Alabama recently dismissed similar wrongful death claims against generic amiodarone manufacturers on federal preemption grounds. *See Stephens v. Teva Pharms. U.S.A., Inc.*, No. 5:13-cv-01357-IPJ, slip op. (N.D. Ala. Oct. 31, 2013) ("*Stephens I*") (attached as Exhibit A); *Stephens v. Teva Pharms. U.S.A., Inc.*, 70 F. Supp. 3d 1246 (N.D. Ala. 2014) ("*Stephens II*"). In addition, Chief Judge Karon Bowdre of the Northern District of Alabama has twice dismissed wrongful death claims against amiodarone manufacturers in another case this year. *See Allain v. Wyeth Pharms., Inc.*, 2015 WL 178038 (N.D. Ala. Jan. 14, 2015); *Dreher v. Wyeth Pharms, Inc.*, 2015 WL 3948961 (N.D. Ala. June 29, 2015). Plaintiff's claims fail for the following reasons:

First, the crux of Plaintiff's claims is that Upsher-Smith failed to provide adequate warnings regarding the use of its generic amiodarone, a claim that is squarely preempted pursuant to the United States Supreme Court's decision in *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011), and the overwhelming weight of authorities post-*Mensing*, including authorities from the Eleventh Circuit. To the extent Plaintiff alleges that Upsher-Smith should have "designed" its generic amiodarone differently, that claim similarly fails because it necessarily attacks the safety of amiodarone as formulated by the brand-name manufacturer and approved by FDA. Such claims are preempted under *Mensing* and *Mutual Pharmaceutical Co. v. Bartlett*, 133 S. Ct. 2466 (2013), because the "sameness" requirement that prohibits generic manufacturers from independently changing product labeling also prohibits them from altering the design or formulation of the generic drug.

Second, Plaintiff's allegations of "off-label"[3] promotion as to Upsher-Smith are irrelevant because she pleads that she used amiodarone for its "intended" use, rather than an off-label use. In any event, such a claim is based on a failure to warn regarding the risks of amiodarone and thus is likewise preempted under *Mensing*. Further, these allegations are wholly conclusory,

---

[3] "Off-label" use refers to the use of a prescription drug to treat a condition other than that approved by FDA.

lacking any information regarding the time, manner, and substance of any alleged representations, or any information that Ms. Church's prescribing physician ever received, let alone, relied upon, any such representations in prescribing amiodarone for her.

Finally, Plaintiff's claims fail to satisfy Rule 8 and Rule 9(b) of the Federal Rules of Civil Procedure because, other than some allegations directed against Defendant Wyeth, Plaintiff "lumps" all the Defendants together in a series of undifferentiated assertions, failing to allege which Defendant did what, and failing to identify any specific acts of misconduct by Upsher-Smith, or the "who, what, when, where, and how" of any purported fraudulent conduct.

For these reasons, Plaintiff's claims as to Upsher-Smith should be dismissed.

## II.   LEGAL STANDARD

A court should dismiss a complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim if the plaintiff fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). Unless the complaint pleads sufficient facts to cross the line "from conceivable to plausible," it must be dismissed. *Twombly*, 550 U.S. at 570. The federal pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003). Even when a complaint does state a claim for relief, it should be dismissed for failure to state a claim if the allegations in the complaint establish an affirmative defense. Federal preemption is a pure question of law that may be determined by this Court on a Rule 12(b)(6) motion to dismiss where, as here, the defense "clearly appears on the face of the complaint." *Quiller v. Barclays American/Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984). Federal preemption of a state-law claim requires its dismissal. *See Guarino v. Wyeth LLC*, 719 F.3d 1245, 1249-50 (11th Cir. 2013); *see also Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009) ("[T]here is no reason not to grant a motion to dismiss where the undisputed

facts conclusively establish an affirmative defense as a matter of law."). Dismissal on preemption grounds should be without leave to amend, because amendment would be futile. *See Fetterhoff v. Liberty Life Assur. Co.*, 282 F. App'x 740, 742-43 (11th Cir. 2008); *Sanson v. Gen. Motors Corp.*, 966 F.2d 618, 621-23 (11th Cir. 1992).

### III. LAW AND ARGUMENT

#### A. Plaintiff's claims against Upsher-Smith are preempted.

Plaintiff's claims are preempted under the Supreme Court's decisions in *Mensing* and *Bartlett*. In *Mensing*, the plaintiffs alleged that the manufacturers of the generic drug they took failed to provide adequate warnings. The manufacturers argued that federal law required them to provide the same warnings as the brand-name drug. As such, the manufacturers asserted, it was impossible for them to comply with both federal law and any state-law duty requiring them to provide different warnings. The Court agreed and held that the plaintiffs' claims were preempted:

> If the Manufacturers had independently changed their labels to satisfy their state-law duty, they would have violated federal law. Taking [the plaintiffs'] allegations as true, state law imposed on the Manufacturers a duty to attach a safer label to their generic metoclopramide. Federal law, however, demanded that generic drug labels be the same at all times as the corresponding brand-name drug labels. *See, e.g.,* 21 CFR § 314.150(b)(10). Thus, it was impossible for the Manufacturers to comply with both their state-law duty to change the label and their federal law duty to keep the label the same.

*Id.* at 2578.[4]

---

[4] The Court deferred to FDA's interpretation of its labeling regulations. FDA's position is that federal regulations: (1) require the labels for generic drugs to always be the same as the brand-name drug; (2) permit generic manufacturers to change their labels *only* to match a revised brand-name label or to follow FDA's instructions; and (3) preclude generic manufacturers from sending additional warnings to healthcare professionals through "Dear Doctor" letters because "substantial new warning information would not be consistent with the drug's approved labeling." *Mensing*, 131 S. Ct. at 2574-76.

{02111451.1/3000-1993}                     4

Since *Mensing*, courts have consistently held that cases against generic drug defendants based on allegations of failure to adequately warn do not survive federal preemption. For example, in *Guarino v. Wyeth LLC*, 719 F.3d 1245 (11th Cir. 2013), the Eleventh Circuit affirmed the dismissal of claims, like those here, alleging negligence, strict liability, breach of warranty, misrepresentation, fraud, and negligence per se against a generic drug manufacturer, finding that the "gravamen" of the plaintiff's claims was that the defendant failed to provide adequate warnings. *Id.* at 1247-50. Referencing the generic manufacturer's "duty of sameness," the court found that "[w]hether a warning is placed on the label on the bottle or in letters to distributors, any state law duty requiring generic manufacturers to act unilaterally in this area is preempted by federal law." *Id.* at 1249 (citing *Morris v. PLIVA, Inc.,* 713 F.3d 774, 776–77 (5th Cir. 2013)). "Because each of Guarino's claims against Teva is premised upon an allegedly inadequate warning, they are all preempted by federal law." *Id.*

Like the Eleventh Circuit, numerous other courts have recognized that *Mensing* preempts not only claims expressly premised on failure-to-warn, but also claims of strict liability, breach of warranty, fraud, and misrepresentation, among others, because these are, in essence, failure-to-warn claims alleging deficiencies in the safety information the manufacturer provided in the FDA-mandated product labeling.[5] *See, e.g.*, *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 475-79 (4th Cir. 2014) (affirming dismissal of fraudulent concealment, misrepresentation, strict liability, negligence, and warranty claims); *Eckhardt v. Qualitest Pharms., Inc.*, 751 F.3d 674, 677-80 (5th Cir. 2014) (affirming dismissal of strict liability, warranty, and consumer protection claims);

---

[5] Notably, federal law broadly defines "labeling" to include all "written, printed, or graphic matter upon" or "accompanying" the drug. 21 U.S.C. § 321(m); *see also* 21 C.F.R. § 202.1(l)(2) ("labeling" includes "[b]rochures, booklets, mailing pieces, detailing pieces, file cards, bulletins, calendars, price lists, catalogs, house organs, letters, motion picture films, filmstrips, lantern slides, sound recordings, exhibits, literature, and reprints and similar pieces of printed, audio, or visual matter descriptive of a drug and references published (for example, the 'Physicians Desk Reference') for use by medical practitioners, pharmacists, or nurses, containing drug information supplied by the manufacturer ….").

*Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1286-90 (10th Cir. 2013) (affirming dismissal of warranty claims); *Metz v. Wyeth, LLC*, 872 F. Supp. 2d 1335 (M.D. Fla. 2012), *aff'd*, 525 F. App'x 893 (11th Cir. 2013) (dismissing strict liability, misrepresentation, fraud, negligence, and warranty claims); *Coney v. Mylan Pharms., Inc.*, 2012 WL 170143, at *4-7 (S.D. Ga. Jan. 19, 2012) (fraudulent concealment, strict liability, and gross negligence claims were preempted); *see also In re Pamidronate Prods. Liab. Litig.*, 842 F. Supp. 2d 479, 484-85 (E.D.N.Y. 2012) (dismissing design defect, negligence, and warranty claims); *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig.*, 2011 WL 5903623, at *9 (D.N.J. Nov. 21, 2011) (dismissing fraud, misrepresentation, warranty, and consumer protection claims); *In re Darvocet, Darvon and Propoxyphene Prods. Liab. Litig.*, 2012 WL 718618, at *5 (E.D. Ky. Mar. 5, 2012), *aff'd*, 756 F.3d 917 (6th Cir. 2014) (same); *Moretti v. PLIVA, Inc.*, 2012 WL 628502, at *5 (D. Nev. Feb. 27, 2012), *aff'd sub nom.*, *Moretti v. Wyeth, Inc.*, 579 F. App'x 563 (9th Cir. 2014), *cert. denied*, 135 S. Ct. 1398 (2015) ("Despite being pled as numerous different causes of action, at their core, all plaintiff's claims arise from plaintiff's allegations that the content of [the generic drug manufacturer's] labeling either was false, misleading, or inadequate. None of the arguments advanced by plaintiff change the preemption analysis.").[6]

The Complaint here shows that Plaintiff fundamentally challenges the adequacy of the warnings provided in the Pacerone labeling. The allegations in the Complaint, regardless of how

---

[6] Other courts are in accord. *See Scott v. Baxter Healthcare Corp.*, 2011 WL 4007675 (S.D. Ala. Sept. 9, 2011); *Henderson v. Sun Pharms. Indus., Ltd.*, 809 F. Supp. 2d 1373 (N.D. Ga. 2011); *Wilson v. Amneal Pharms., L.L.C.*, 2013 WL 6909930 (D. Idaho Dec. 31, 2013); *Tillman v. Woldenberg Village, Inc.*, 2013 WL 6198864 (E.D. La. Nov. 27, 2013); *Phelps v. Wyeth*, 857 F. Supp. 2d 1114 (D. Or. 2012); *Richardson v. Wyeth Inc.*, 2011 WL 5402396 (W.D. La. Nov. 7, 2011), *adopting report & recommendation*, 2011 WL 5402184 (W.D. La. Oct. 20, 2011); *Waguespack v. Pliva USA, Inc.*, 2011 WL 5826015 (E.D. La. Nov. 3, 2011); *Guilbeau v. Wyeth Inc.*, 2011 WL 4948996 (W.D. La. Oct. 14, 2011); *Schork v. Baxter Healthcare Corp.*, 2011 WL 4402602 (S.D. Ind. Sept. 22, 2011); *Beck v. Teva Pharm. Indus. Ltd.*, 2011 WL 4062219 (E.D. La. Sept. 13, 2011); *Brown v. Actavis Elizabeth, LLC*, 2011 WL 5826022 (E.D. La. Aug. 10, 2011).

Plaintiff characterizes them, are premised on inadequate warnings, as the following examples show:

- "If [Upsher-Smith] had performed its obligations, and also taken note of the accumulation of adverse event experience reports and the published medical studies about Pacerone … it would have had substantiation to warrant label changes, which, in turn, would have provided warning to Ms. Church and her physicians." (Compl. ¶ 83);
- "Upsher[-Smith] did nothing significant to strengthen the label despite reasonable evidence of the drug's association with a serious hazard." (*Id.* ¶ 85);
- "In addition to proposing a label change, Upsher[-Smith] should have suggested that the FDA send out a warning letter to health care professionals concerning atrial fibrillation associated pulmonary fibrosis from the ingestion of Amiodarone." (*Id.* ¶ 88);
- "Ms. Church's injuries resulted because Pharmaceutical Defendants failed to properly or adequately warn and affirmatively mislead [sic] Ms. Church and her healthcare provider about Pacerone …." (*Id.* ¶ 92);
- "Pharmaceutical Defendants failed to disclose to the FDA, health care professionals, consumers or Ms. Church, of the information they possessed concerning the actual adverse medical events, injuries, and deaths suffered by Amiodarone users." (*Id.* ¶ 118);
- "Pharmaceutical Defendants manufactured and/or supplied Amiodarone unaccompanied by proper warnings regarding all possible adverse side effects …." (*Id.* ¶ 120);
- "The Pharmaceutical Defendants failed to provide Ms. Church, her physicians, the FDA and other health care providers with detailed and sufficient warnings for risks associated with the uses of Amiodarone." (*Id.* ¶ 127);
- "The Pharmaceutical Defendants failed to adequately disclose to the patients, the health care providers, Ms. Church, Ms. Church's physicians and others that there [is] no available drug, agent or means to reverse the effects of Amiodarone …." (*Id.* ¶ 130).

As *Mensing* and its progeny make clear, federal law required Upsher-Smith to provide warnings for its generic amiodarone that were the same as the warnings for the brand-name drug, Cordarone®. Because Upsher-Smith could not simultaneously comply with a state-law duty to

modify the warnings and the federal requirement to keep the same warnings as the brand-name drug, Plaintiff's state-law claims directly conflict with federal law and are, therefore, preempted.

To the extent Plaintiff alleges that Pacerone was defectively designed (*see, e.g.*, Compl. ¶¶ 173-76, 307-10), those claims likewise are preempted under *Bartlett*. In *Bartlett*, the Supreme Court extended *Mensing* to bar claims that a generic drug was defectively designed. The plaintiff's claims of design defect under New Hampshire law required the defendant to either change the drug's labeling or its design. *Id*. at 2466. "As [*Mensing*] made clear, federal law prevents generic drug manufacturers from changing their labels." *Id.* at 2476 (citing *Mensing*, 131 S. Ct. at 2577). The Court found that federal law equally prohibits changes to a generic drug's design: "[T]he FDCA [Food, Drug, and Cosmetic Act] requires a generic drug to have the same active ingredients, route of administration, dosage form, strength, and labeling as the brand-name drug on which it is based." *Id.* at 2475. Further, "[o]nce a drug—whether generic or brand-name—is approved, the manufacturer is prohibited from making any major changes to the 'qualitative or quantitative formulation of the drug product, including active ingredients, or in the specifications provided in the approved application.' " *Id.* at 2471 (citing 21 C.F.R. § 314.70(b)(2)(i)).

"[T]here was no action that [Upsher-Smith] could take … to increase the safety of its product without violating the restrictions of the FDCA." *Drager*, 741 F.3d at 478 (holding that *Bartlett* preempts design defect claims under either the risk-utility or consumer-expectations approach); *see id.* at 476 ("[U]nder the FDCA a generic may not unilaterally change its labeling or change its design or formulation, and cannot be required to exit the market or accept state tort liability.").[7]

---

[7] Though separate from the preemption analysis, Plaintiff also has not alleged that "a safer, practical, alternative design" for Pacerone was available at the time Upsher-Smith manufactured the Pacerone used by Ms. Church, as must be proven under Alabama law. *See McMahon v. Yamaha Motor Corp.*, 95 So. 3d 769, 772 (Ala. 2012).

{02111451.1/3000-1993}                    8

Judge Inge Prytz Johnson recently held that similar wrongful death claims involving amiodarone were preempted by *Mensing* and *Bartlett*. *See Stephens I* (Ex. A); *Stephens II*, 70 F. Supp. 3d 1246. In *Stephens*, the plaintiffs alleged, as here, that the decedent died as a result of using generic amiodarone, purportedly for an "off-label" use. *Stephens I*, slip op. at 4-5; *Stephens II*, 70 F. Supp. 3d at 1248. Judge Johnson found that "[t]he Supreme Court cases of *Mensing* and *Bartlett* [were] wholly dispositive of the motion [to dismiss]" and she dismissed all of the plaintiffs' claims, including causes of action for negligence, strict liability, fraud, and breach of warranty, among others. *Stephens I*, slip op. at 9-19 & 17 n.9; *Stephens II*, 70 F. Supp. 3d at 1250-51. Similarly, Judge Karon Bowdre recently found that "*Mensing* squarely precludes any suit against the Generic Defendants based on the alleged inadequacy of amiodarone's warnings." *Dreher*, 2015 WL 3948961, at *4.[8] For all these reasons, Plaintiff's claims are preempted and the Court should dismiss Plaintiff's action as to Upsher-Smith.[9]

---

[8] Implicitly acknowledging that Upsher-Smith could not change the labeling or design of Pacerone, Plaintiff nonetheless seeks to avoid preemption in two ways. First, by alleging that Upsher-Smith should have proposed a labeling change to FDA and asked FDA to issue a warning letter to health care professionals. (Compl. ¶¶ 88-89.) And second, by alleging that Upsher-Smith should have stopped selling Pacerone after learning that its labeling was inadequate. (*Id.* ¶ 90.) Neither allegation avoids preemption; the Supreme Court has expressly rejected both arguments. *See Mensing*, 131 S. Ct. at 2578-79; *Bartlett*, 133 S. Ct. at 2477-78.

[9] Even if Plaintiff's inadequate warning claims against Upsher-Smith were not preempted, which they clearly are, these allegations fail to state a claim for the reasons discussed in sections III.B and III.C. Further, Plaintiff does not connect her inadequate warnings allegations to Ms. Church's prescription and use of Upsher-Smith's Pacerone. For example, Plaintiff alleges that Upsher-Smith (and the other pharmaceutical defendants) failed to warn about "the detrimental impact of long-term use of amiodarone, appropriate dosage amounts, and with what other drugs it could be taken in combination." Compl. ¶¶ 102, 128. But Plaintiff does not allege that Ms. Church used Pacerone long-term, took Pacerone in excessive dosages, or used Pacerone in combination with any other drug. As such, these allegations would fail to state any claim against Upsher-Smith. Even more basic, Plaintiff does not allege how Ms. Church's use of Pacerone in 2012, ending in January 2013, caused her death ***nearly a year later*** on December 26, 2013. "At a minimum, plaintiff[] would need to allege some concrete basis for [her] assertion that [Ms. Church's] death was caused by [Upsher-Smith's] amiodarone." *Stephens II*, 70 F. Supp. 3d at 1249 ("The [complaint] wholly fails to draw any connection between decedent's ailments and defendants' actions").

{02111451.1/3000-1993}  9

### B.   Plaintiff's allegations of "off-label" promotion do not state a claim.

Plaintiff's allegations of "off-label" promotion also fall short of stating a legally cognizable claim. Initially, it appears that Ms. Church may have been prescribed amiodarone by her physician for one of its FDA-approved uses, not an off-label use (i.e., a use not approved by FDA). (*See* Compl. ¶ 292) ("Ms. Church was prescribed and used their product for its ***intended*** purpose.") (emphasis added). To the extent Ms. Church used amiodarone for an FDA-approved use, any allegations of off-label promotion are entirely irrelevant.

Even if Ms. Church used amiodarone for an off-label purpose, any claim involving off-label promotion is still grounded in a failure to warn, (*see, e.g.*, *id*. ¶¶ 90, 120, 124), and thus is preempted under *Mensing*. *See Kellogg v. Wyeth*, 2012 WL 368658, at *5 (D. Vt. Feb. 3, 2012) ("*Mensing* now bars a lawsuit against a generic manufacturer for failing to provide additional information about the safety of [a generic drug], whether for an approved or an unapproved use.").

Any claim based on off-label promotion would further fail because it is entirely conclusory. Plaintiff does not identify ***any*** instance of off-label promotion by Upsher-Smith, nor does she allege facts connecting any alleged off-label promotion by Upsher-Smith to Ms. Church's amiodarone prescriptions. Instead, Plaintiff merely repeats a series of general allegations directed against Defendant Wyeth and substitutes Upsher-Smith's name for Wyeth's. (*Compare* Compl. ¶¶ 43, 45, 46, 47, 48, 60 *with id*. ¶¶ 67, 69, 70, 71, 72, 73, 102.)

Further, Plaintiff repeatedly lumps all the "Pharmaceutical Defendants" together in a number of vague, generalized accusations. (*E.g.*, Compl. ¶¶ 118, 120-21, 124-26, 129, 134, 140-42.) For example, Plaintiff attempts to hide the complete lack of support for her claims against Upsher-Smith by alleging that the "Pharmaceutical Defendants," collectively, "actively promoted Amiodarone for off-label, unapproved uses as described herein through various means …." (*Id*. ¶ 118.) But the general allegations in paragraph 118 of the Complaint merely repeat—

verbatim—allegations made against Defendant Wyeth in paragraph 63.[10]  These allegations do not identify particular instances of off-label promotion by Upsher-Smith—or anyone else.  (*Id.*)  As discussed in more detail in the next section, allegations such as these do not identify the "who, what, when, where, and how" necessary to satisfy Rule 9(b) for claims based on fraudulent conduct, and are precisely the type of baseless, injurious claims that Rule 9(b) is meant to protect defendants against.  *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006); *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001) (Rule 9(b) protects defendants "against spurious charges of immoral and fraudulent behavior").

Plaintiff's inadequate and conclusory allegations are shown by her failure to plead facts showing that Ms. Church's prescribing physician received, saw, or heard any alleged off-label promotion from Upsher-Smith, let alone that he or she chose to prescribe amiodarone for Ms. Church in reliance on such information.  *See Stephens I*, slip op. at 7 (dismissing similar claims where "[t]he plaintiffs accuse defendants of promoting Amiodarone for off-label uses, but never state this was the basis for decedent's prescription" and plaintiffs failed to "plead sufficient factual content regarding what marketing or promotional representations were made, by which Defendants, to who, and how those statements violated applicable federal law"); *Dreher*, 2015 WL 3948961, at *6-7 (dismissing claims based on off-label promotion where plaintiff "fail[ed]

---

[10]  Restating verbatim an allegation from *Stephens*, Plaintiff further alleges that the Pharmaceutical Defendants "simultaneously engaged in a massive and fraudulent marketing and promotional scheme . . . ."  Compl. ¶ 142; *Stephens II*, 70 F. Supp. 3d at 1252 n.5.  But as the *Stephens* court found, "Plaintiff fail[s] to assert when this massive and fraudulent marketing and promotional scheme occurred.  Because amiodarone has been available in its name brand formulation since the mid-1980s, and as a generic since 1998, the plaintiff[] need[s] more than this loose allegation to establish that [Ms. Church's] doctor would not have prescribed amiodarone for [her] in [2012] had defendants not promoted the medication for the relevant off-label use . . . ."  *Id*.; *see also Stephens I*, slip op. at 15 ("The plaintiffs cannot seek damages from these defendants based on the decedent's treating physician choice of prescriptions."); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 351 n.5 (2001) ("Off-label use is widespread in the medical community and often is essential to giving patients optimal medical care, both of which medical ethics, FDA, and most courts recognize.") (citation omitted).

{02111451.1/3000-1993}                                         11

to point to any statements made by either of the Generic Defendants that misled [the plaintiff], [the plaintiff's] physicians, or any physician for that matter").

### C. Plaintiff's undifferentiated allegations against multiple defendants do not satisfy federal pleading standards.

Plaintiff's failure to differentiate the alleged misconduct of each of the defendants also warrants dismissal of her Complaint. After merely repeating as to Upsher-Smith a number of general allegations made against Defendant Wyeth, Plaintiff rotely lumps all the "Pharmaceutical Defendants" together in a series of undifferentiated, conclusory allegations, including alleged fraudulent conduct. (*See* Compl. ¶¶ 116-49.) This does not satisfy Rule 8, much less the particularity requirements of Rule 9(b) applicable to Plaintiff's fraud-based claims. *See Allain*, 2015 WL 178038, at *3 ("Plaintiff consistently lumps the Defendants into an undifferentiated group and makes broad sweeping allegations against all Defendants, failing to cite any specific factual instances for support. Such 'naked assertions' without supporting factual allegations are insufficient to survive a motion to dismiss."); *Dreher*, 2015 WL 3948961, at *5-6 (holding the same undifferentiated allegations Plaintiff makes here "insufficient to satisfy Rule 8 because they fail to allege *specific* instances of misconduct against *specific* defendants.") (emphasis in original); *see also Petrovic v. Princess Cruise Lines, Ltd.,* 2012 WL 3026368, at *3 (S.D. Fla. July 20, 2012) ("[A] complaint that 'lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct' fails to satisfy Rule 8.") (citations omitted); *George & Co., LLC v. Alibaba.com, Inc.,* 2011 WL 6181940, at *2 (M.D. Fla. Dec. 13, 2011) ("[B]y indiscriminately lumping defendants together, plaintiff has failed to comply with Federal Rule of Civil Procedure 8.").

To satisfy Rule 9(b), Plaintiff must allege: " '(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the

plaintiff, and (4) what the defendants obtained as a consequence of the fraud.' " *Ziemba,* 256 F.3d at 1202 (quoting *Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1371 (11th Cir.1997)).  "[I]n a case involving multiple defendants … the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007) (citation omitted); *see also Brooks,* 116 F.3d at 1380–81 (holding that fraud claims failed to satisfy Rule 9(b) because they lumped together all of the defendants and were devoid of specific allegations with respect to each defendant); *United States ex rel. Clausen v. Lab. Corp. of America, Inc*., 290 F.3d 1301, 1308 (11th Cir. 2002) ("Rule 9(b) prevents '[s]peculative suits against innocent actors for fraud' … [U]nder Rule 9(b) allegations of fraud 'must include facts as to time, place, and substance of the defendant's alleged fraud.' ") (citations omitted).  These allegations are woefully absent here.

Plaintiff has not alleged who from Upsher-Smith made any false statements or representations (or omissions), what their precise content was, when and where they were made, or how Ms. Church's prescribing physician was misled by them.  Instead, Plaintiff makes only conclusory allegations, such as the following:

- "Upsher[-Smith's] scheme was implemented so Defendant could tap into the enormous market for Amiodarone in the United States."  (Compl. ¶ 71);
- "Upsher[-Smith's] scheme, described in more detail below, ultimately deceived Ms. Church, and her physicians, and affirmatively misled physicians, pharmacists, and consumers into believing that prescribing and taking Pacerone for the off-label uses that Upsher promoted was appropriate …."  (*Id.* ¶ 73);
- "Upsher-[Smith] however continued to promote Pacerone for unapproved uses for which Ms. Church and her physician(s) relied to the detriment and eventual death of Ms. Church."  (*Id.* ¶ 102);
- "These Pharmaceutical Defendants engaged in a conspiracy of silence regarding off-label use of Amiodarone, choosing to market and promote the drug for off-label use, and then feigning ignorance before the FDA, health care providers and consumers, such as Ms. Church."  (*Id.* ¶ 120);
- "Pharmaceutical Defendants … engaged in a massive and fraudulent marketing and promotional scheme in which they aggressively and

> fraudulently promoted Amiodarone for uses never authorized by the FDA." (*Id.* ¶ 142);

- "Pharmaceutical Defendants' intentional misrepresentations and material non-disclosures … were done with the knowledge that they were false when made. As a result of Pharmaceutical Defendants' fraud, suppression and omission of facts, Ms. Church's health care physician prescribed Amiodarone and Ms. Church acted to her detriment by purchasing and ingesting the Amiodarone …." (*Id.* ¶ 147).

The Complaint further fails to allege that Ms. Church's unnamed physician(s) received, saw, or heard any representations from Upsher-Smith (or any other defendant), much less any representations that he or she relied upon in choosing to prescribe amiodarone for Ms. Church. Accordingly, the Complaint fails to satisfy federal pleading requirements and must be dismissed for this additional reason.[11]  *See Dreher*, 2015 WL 3948961, at *6-7 (dismissing similar fraud claims against amiodarone manufacturers for failure to satisfy the "precise statements" and "'time, place, and person' requirements of Rule 9(b)").

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's claims against Upsher-Smith are preempted and fail to satisfy federal pleading rules, and thus should be dismissed.  This dismissal should be without leave to amend as no amendment will change this result.[12]

---

[11] Throughout her Complaint, Plaintiff also alleges in conclusory fashion that Upsher-Smith withheld information from FDA regarding Pacerone.  To the extent Plaintiff seeks to hold Upsher-Smith liable for allegedly concealing information from FDA, that claim also is preempted.  *See Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347-48 (2001) (holding that claims of "fraud on the FDA" are impliedly preempted); *Se. Laborers Health and Welfare Fund v. Bayer Corp.*, 444 F. App'x 401, 407 (11th Cir. 2011) (citing *Buckman*); 21 U.S.C. § 337(a) ("[A]ll such proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States.").

[12] *See Stephens II*, 70 F. Supp. 3d at 1254 (denying alternative request for leave to amend because "any such amendment would be futile").

{02111451.1/3000-1993}                                14

DATED: August 20, 2015        /s/ Walter J. Price III
Walter J. Price III, ASB-0127-C66W
HUIE, FERNAMBUCQ & STEWART
2801 Highway 280 South
Suite 200
Birmingham, Alabama 35223-2484
Tel: 205.251.1193
Fax: 205.251.1256
wprice@huielaw.com

Mark C. Hegarty, Mo. Bar No. 40995
(*pro hac vice* application forthcoming)
SHOOK, HARDY & BACON LLP
2555 Grand Blvd.
Kansas City, Missouri 64108
Tel: 816.474.6550
Fax: 816.421.5547
mhegarty@shb.com

*Attorneys for Defendant Upsher-Smith Laboratories, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2015, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system which will send notification of such filing to the following attorneys and mailing the document via U. S. Mail to the attorneys who are non-participants to the E-File system:

Alan T. Hargrove, Jr., Esq.
Rushton, Stakely, Johnston & Garrett, P.A.
P.O. Box 270
Montgomery, AL 36101
*Attorney for Defendants Wyeth, Inc.,*
*Wyeth Pharmaceuticals, Inc.,*
*Pfizer, Inc., Pfizer, Inc. f/k/a Wyeth, Inc.,*
*and Wyeth, LLC*
ath@rushtonstakely.com

Christopher G. Campbell, Esq.
DLA Piper, LLP
1201 West Peachtree Street; Suite 2800
Atlanta, GA  30309
*Attorney for Defendants Wyeth, Inc.,*
*Wyeth Pharmaceuticals, Inc.,*
*Pfizer, Inc., Pfizer, Inc. f/k/a Wyeth, Inc.,*
*and Wyeth, LLC*

Jamie A. Johnston, Esq.
Jamie A. Johnston, P.C.
401 Madison Ave.
P.O. Box 598512
Montgomery, Alabama 36104
*Attorney for Plaintiff*
Jamie@jjohnstonpc.com

Harlan I. Prater, Esq.
Brian P. Kappel, Esq.
Lightfoot, Franklin & White, LLC
The Clark Building
400 20th Street North
Birmingham, AL 35203-3200
hprater@lightfootlaw.com
bkappel@lightfootlaw.com
*Attorneys for Eon Labs, Inc. and Sandoz, Inc*

Lori G. Cohen, Esq.
Sara K. Thompson, Esq.
Greenberg Traurig LLP
3333 Piedmont Rd – Terminus 200
Suite 2500
Atlanta, GA  30305
cohenl@gtlaw.com
thompsons@gtlaw.com
*Attorneys for Eon Labs, Inc. and Sandoz, Inc*

 

                                                   */s/ Walter J. Price, III*
                                                   Of Counsel