# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| MARY ANN INGRAM, as Executrix of the Estate of ADA ERLE CHURCH and Personal Representative of ADA ERLE CHURCH, deceased, | |
|     Plaintiff, | Case No. 2:15-CV-00592-MHT |
| v. | |
| WYETH, INC.; WYETH PHARMACEUTICALS, INC.; PFIZER, INC.; PFIZER, INC. f/k/a WYETH, INC.; WYETH, LLC; SANDOZ INC. f/k/a GENEVA PHARMACEUTICALS, INC.; EON LABS, INC. f/k/a EON LABS MANUFACTURING, INC.; UPSHER-SMITH LABORATORIES, INC.; WYETH, INC. f/k/a WYETH COMPANY f/k/a AMERICAN HOME PRODUCTS CORPORATION; WYETHAYERST LABORATORIES COMPANY; TARO PHARMACEUTICALS USA, INC.; RIVER REGION CARDIOLOGY ASSOCIATES; DR. PERVAIZ A. MALIK; DR. MOHAMMAD IRFAN; FICTITIOUS DEFENDANTS A-Z, | |
|     Defendants. | |

## DEFENDANTS EON LABS, INC. AND SANDOZ INC.'S DISPOSITIVE MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM AND INCORPORATED MEMORANDUM OF LAW

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

    I.  REGULATORY BACKGROUND ........................................................ 3

        A.  The Federal Regulatory Scheme for Generic Drugs. ....................................... 3

        B.  Regulatory History of Defendants' Amiodarone. ............................................ 5

    II.  PLAINTIFF'S CLAIMS AGAINST THE PHARMACEUTICAL
        DEFENDANTS ...................................................................................... 6

ARGUMENT ................................................................................................................. 8

    I.  PLAINTIFF'S CLAIMS ARE ALL PREEMPTED BY FEDERAL LAW
        PURSUANT TO *BARTLETT* AND *MENSING*. ................................... 8

        A.  Plaintiff's Negligence Claims Are Preempted. ............................................... 13

        B.  Plaintiff's AELMD Claim Is Preempted. ....................................................... 13

        C.  Plaintiff's Breach of Warranty Claims Are Preempted. ................................. 14

        D.  Plaintiff's Failure to Warn Claim Is Preempted. ............................................ 15

        E.  Plaintiff's Design Defect Claim Is Preempted. .............................................. 16

    II.  PLAINTIFF'S CLAIMS ARE ALSO INSUFFICIENTLY PLED. ..................... 18

        A.  Plaintiff's Claims Fail to Differentiate Between the Defendants. .................. 19

        B.  Plaintiff's Fraud Claims Are Not Pled with Particularity as Required by Rule
        9(b). ................................................................................................................. 21

CONCLUSION .............................................................................................................. 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Allain v. Wyeth Pharmaceuticals Inc., et al.*,
    2:14-cv-00280-KOB (N.D. Ala. Jun. 29, 2015) ...................................................................11

*In re Amgen Inc. Sec. Litig.*,
    544 F. Supp. 2d 1009 (C.D. Cal. 2008) ...........................................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...............................................................................3, 18, 19, 20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)....................................................................................18, 19, 20

*Brown v. Actavis Elizabeth, LLC*,
    No. 10–11, 2011 WL 5826022 (E.D. La. Aug. 10, 2011) ......................................13

*Buckman Co. v. Plaintiffs' Legal Committee*
    531 U.S. 341 (2001)........................................................................................9

*Chapman v. Abbott Labs.*,
    930 F. Supp. 2d 1321 (M.D. Fla. 2013).........................................................................6

*Connolly v. Sandoz Pharmaceuticals Corp., et al.*,
    2:14-cv-152-WCO (N.D. Ga. Dec. 23, 2014).......................................................11

*In re Darvocet, Darvon & Propoxyphene Products Liab. Litig.*,
    756 F.3d 917 (6th Cir. 2014) ...................................................................10, 15, 16

*Drager v. PLIVA USA, Inc.*,
    741 F.3d 470 (4th Cir. 2014) ...........................................................10, 13, 16, 17

*Eckhardt v. Qualitest Pharm., Inc.*,
    751 F.3d 674 (5th Cir. 2014) .......................................................10, 15, 16, 17

*In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*,
    590 F. Supp. 2d 1282 (C.D. Cal. 2008) ............................................................6

*In re Fosamax Products Liab. Litig.*,
    751 F.3d 150 (3rd Cir. 2014) .................................................................10, 16, 17

*Guarino v. Wyeth, LLC*,
    719 F.3d 1245 (11th Cir. 2013) ...................................................................... *passim*

iii

*Henderson v. Sun Pharmaceutical Ind., Ltd.*,
    809 F. Supp. 2d 1373 (N.D.Ga. 2011) ...................................................................13

*Horne v. Novartis Pharm. Corp.*,
    541 F. Supp. 2d 768 (W.D.N.C. 2008) ...................................................................6

*Horne v. Potter*,
    392 F. App'x 800 (11th Cir. 2010) ...........................................................................6

*Houston v. Bayer Healthcare Pharm., Inc.*,
    No. 2:14-CV-00035-WMA, 2014 WL 1330906 (N.D. Ala. Mar. 28, 2014)..........................22

*Johnson v. Teva Pharm. USA, Inc.*,
    758 F.3d 605 (5th Cir. 2014) ...............................................................10, 15, 16, 17

*Lasley & Del Valle v. Pfizer, Inc.*,
    750 F.3d 470 (5th Cir. 2014) ...........................................................................10, 16

*Lewkut v. Stryker Corp.*,
    724 F. Supp. 2d 648 (S.D. Tex. 2010) .....................................................................6

*Marshall County Bd. of Educ. v. Marshall County Gas Dist.*,
    992 F.2d 1171 (11th Cir. 1993) ...............................................................................9

*Metz v. Wyeth LLC*,
    525 Fed. Appx. 893 (11th Cir. Aug. 1, 2013) .......................................................2, 8

*Moretti v. Mutual Pharm. Co.*,
    518 Fed. Appx. 486 (8th Cir. 2013)........................................................................10

*Mutual Pharm. Co., Inc. v. Bartlett*,
    133 S. Ct. 2466 (2013)........................................................................2, 10, 11, 17

*In re Pamidronate Products Liab. Litig.*,
    842 F. Supp. 2d 479 (E.D.N.Y. 2012) ..................................................................14

*Pietrangelo v. NUI Corp.*,
    No. Civ. 04-3223, 2005 WL 1703200 (D.N.J. July 20, 2005).................................20

*PLIVA, Inc. v. Mensing*,
    131 S. Ct. 2567 (2011) ................................................................................ *passim*

*Schrock v. Wyeth, Inc.*,
    727 F.3d at 1273 (10th Cir. 2013).....................................................14, 15, 16

*Stengel v. Medtronic, Inc.*,
    676 F.3d 1159 (9th Cir. 2012) .................................................................................6

*Stephens v. Teva Pharmaceuticals Inc., et al.*,
   5:13-cv-01357-IPJ (N.D. Ala. Oct. 1, 2014) ...................................................11, 12

*Strayhorn v. Wyeth Pharm. Inc*,
   737 F.3d 378 (6th Cir. 2013) ...........................................................................17

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ...........................................................................20

*Tierney v. AGA Medical Corp.*,
   No. 4:11CV3098, 2011 WL 7400469 (D. Neb. Nov. 18, 2011)..............................6

*In re Zyprexa Prod. Liab. Litig.*,
   549 F. Supp. 2d 496 (E.D.N.Y. 2008) ...............................................................6

**State Cases**

*Fisher v. Comer Plantation*,
   772 So.2d 455 (Ala. 2000)...............................................................................22

*Wyeth, Inc. v. Weeks*,
   No. 1101397, 2014 WL 4055813 (Ala. Aug. 15, 2014) .......................................22

**Federal Rules**

Fed R. Civ. P. 8(a)(2)........................................................................... *passim*

Fed R. Civ. P. 9(b) ............................................................................. *passim*

FED. R. CIV. P. 12(b)(6)...........................................................1, 19, 22, 23

FED. R. EVID. 201(b)(2)...................................................................................6

**Federal Statutes**

21 U.S.C. § 355(j)(2)(A)...................................................................... *passim*

Federal Food, Drug and Cosmetic Act ......................................................3, 9, 10

**State Statutes**

Ala. Code 1975 § 6–5–101 ..............................................................................21

Consumer Protection Laws ...................................................................1, 7, 21, 23

**Regulations**

21 C.F.R. § 314.50(c)(2)(i) ...............................................................................3

21 C.F.R. § 314.94(a)(8)........................................................................................................3

21 C.F.R. § 314.150(b)(10).....................................................................................................4

**Other Authorities**

"Alabama Extended Manufacturers Liability Doctrine" ("AELMD").........................................13

 "Violation of Alabama Extended Manufacturers' Liability Doctrine"
   ("AELMD")........................................................................................................................1, 7

Defendants Eon Labs, Inc. ("Eon") and Sandoz Inc. ("Sandoz") (collectively "Defendants"), by and through their undersigned counsel and pursuant to Federal Rules of Civil Procedure 12(b)(6) and 8(a)(2), hereby submit their Motion to Dismiss Plaintiff's Complaint ("Motion") and incorporated memorandum of law, respectfully showing the Court as follows:

## INTRODUCTION

Plaintiff asserts this product liability action against various manufacturers and distributors of the prescription drug amiodarone hydrochloride ("amiodarone"), alleging this drug alone and in conjunction with the drug Xarelto® caused the decedent to experience bleeding, hepatitis and other injuries which allegedly led to her death. (Compl. ¶¶ 8; 10.) Plaintiff has in blanket fashion brought claims against brand and generic manufacturers of amiodarone in multiple dosages, with little differentiation between defendants in her allegations. Her only specific allegations as to Eon and Sandoz are that they manufactured, distributed and sold amiodarone purportedly ingested by the decedent, and she has alleged upon information and belief that Sandoz and Eon were cited by the United States Food and Drug Administration ("FDA") for certain purported violations (although she has no factual support whatsoever for these baseless claims.) Plaintiff further alleges upon information and belief that Eon, Sandoz and the other defendants failed to submit marketing materials to FDA, failed to affirmatively monitor off-label use, promoted unapproved uses, and suppressed information regarding risks. (Id. ¶¶ 107-108; 113-114.)

Plaintiff's Complaint asserts causes of action against the Pharmaceutical Defendants that sound in Negligence; "Violation of Alabama Extended Manufacturers' Liability Doctrine" ("AELMD"); Breach of Express Warranty; Breach of Implied Warranty; Fraudulent Misrepresentation; Fraudulent Concealment; Negligent Misrepresentation; Fraud and Deceit; Violation of Consumer Protection Laws; Failure to Warn; Negligent Design; and Wrongful

Death. (*Id.* ¶¶ 157-323.) Despite the myriad allegations contained in Plaintiff's 336 paragraph Complaint, each of Plaintiff's claims against Eon and Sandoz, at their root, seek to hold them liable for purportedly inadequate warnings or an alleged design defect in their generic amiodarone. However, because Eon and Sandoz manufactured and distributed amiodarone pursuant to Abbreviated New Drug Applications ("ANDAs") reviewed and approved by the FDA, which specified the content of their labeling and the design to which they were required to remain bioequivalent at all times, Plaintiff's failure to warn and design defect claims are preempted under the United States Supreme Court's decisions in *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011) and *Mutual Pharm. Co., Inc. v. Bartlett*, 133 S. Ct. 2466 (2013).

In *Mensing*, the Supreme Court held federal law preempts state law tort claims premised on an alleged failure to warn about the risks of generic drugs because such claims conflict with federal law requiring generic manufacturers to conform their warnings to those of the equivalent brand name product. *Mensing*, 131 S. Ct. at 2577-78. In 2013, the Court reinforced the breadth of *Mensing* and expanded its scope to include design defect claims and claims that generic drug products should have been withdrawn from the market. *Bartlett*, 133 S. Ct. at 2480.

Most Circuit Courts of Appeal have followed suit, affirming dismissals of virtually every type of tort claim that could be pled against generic manufacturers as preempted by federal law. Specifically, the Eleventh Circuit has followed *Mensing* and *Bartlett* in upholding dismissals of negligence, failure to warn and design defect claims against generic pharmaceutical manufacturers as preempted by federal law. *See, e.g., Guarino v. Wyeth, LLC*, 719 F.3d 1245, 1247–49 (11th Cir. 2013) (claims attacking the sufficiency of generic drug warnings are preempted under *Mensing*); *Metz v. Wyeth LLC*, 525 Fed. Appx. 893 (11th Cir. Aug. 1, 2013) (affirming grant of summary judgment on preemption grounds). There is no reason for this Court

2

to deviate from these clear directives of the Eleventh Circuit and Supreme Court that claims such as those pled here are preempted by federal law. Accordingly, Eon and Sandoz respectfully request that the Court dismiss all of Plaintiff's claims against them, with prejudice.

Plaintiff's claims are both preempted and  insufficiently pled. Plaintiff has failed to plead any specific facts against Eon or Sandoz, and instead makes broad, sweeping, and unsupported allegations against the "Pharmaceutical Defendants" as a whole. Plaintiff has also failed to plead facts to support her claims. A complaint cannot survive a motion to dismiss unless it provides "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Here, Plaintiff does not provide any facts to support her claims against Eon or Sandoz; only conclusory allegations of liability under a laundry list of legal theories are pled against all of the amiodarone manufacturers. Plaintiff also has failed to plead her fraud-based claims with the particularity required by Fed. R. Civ. P. 9(b). Plaintiff's Complaint is completely devoid of sufficient factual allegations and fails to meet the pleading requirements of Fed. R. Civ. P. 8(a)(2) and 9(b), and should therefore be dismissed.

## I.    REGULATORY BACKGROUND

### A.  The Federal Regulatory Scheme for Generic Drugs.

Pursuant to the Federal Food, Drug and Cosmetic Act ("FDCA"), the FDA regulates the approval of both brand name and generic drugs. *See* 21 C.F.R. § 314.50(c)(2)(i) (brand name); 21 C.F.R. § 314.94(a)(8) (generic). A manufacturer seeking FDA approval to market a new drug must first demonstrate it is safe and effective and that its proposed label is accurate and adequate, through the filing of a New Drug Application ("NDA"). *Mensing*, 131 S. Ct. at 2574. This approval process for brand name drugs involves costly and lengthy clinical testing. *Id.*

In contrast, generic drugs are "designed to be a copy of a reference listed drug (typically a brand name drug), and thus identical in active ingredients, safety and efficacy." *Id.* Generic manufacturers obtain FDA approval to manufacture and sell generic drug products under the regulatory framework set forth in what are commonly known as the Hatch-Waxman Amendments ("Hatch-Waxman"), 21 U.S.C. § 355(j)(2)(A). *Id.* Hatch-Waxman changed the approval requirements for generic drugs to require only submission of an ANDA to show a generic drug is identical in all material respects to a previously-approved NDA, *i.e.*, a brand name drug. 21 U.S.C. § 355(j)(2)(A). Hatch-Waxman also requires that the "labeling proposed [for an ANDA] is the same as the labeling approved for the [brand name drug]." *Mensing*, 131 S. Ct. at 2574. Therefore, in contrast to an NDA applicant's responsibility to demonstrate the accuracy and adequacy of its warnings, an ANDA applicant need only demonstrate that its "warning label is the same as the brand name's" to receive FDA approval. *Id.*

Upon receiving FDA approval of an ANDA, the only duty incumbent upon a generic manufacturer under federal law with respect to its warnings is an ongoing duty of "sameness" — to ensure its generic drug's labeling remains identical to the Reference Listed Drug ("RLD") to which it is required to remain equivalent. *Id.* at 2574-75. Generic manufacturers are prohibited from independently changing their labeling in any respect without prior FDA approval. *Id.* at 2577 ("Federal drug regulations, as interpreted by the FDA, prevented the manufacturers from independently changing their generic drugs' safety labels."); *see also* 21 C.F.R. § 314.150(b)(10) (authorizing FDA to revoke approval of a generic drug if its labeling "is no longer consistent with that for the listed drug"). For a generic manufacturer to independently change its warning labeling, even to strengthen it, would violate federal law. *Mensing*, 131 S. Ct. at 2575.

This continuing federal duty of sameness extends beyond the labeling to the design of the drug as well. To gain and keep ANDA approval, generic manufacturers must also show their products are bioequivalent to the brand name or reference listed drug. *See* 21 U.S.C. § 355(j)(2)(A)(i)-(iii) (ANDA applicants must demonstrate that a generic drug contains the same active ingredient(s); employs the same route of administration; presents the same dosage form; and exhibits the same strength as its brand name counterpart). As the *Mensing* court explained, federal law explicitly requires a generic drug to be "identical [to its branded equivalent] in active ingredients, safety, and efficacy," just as each generic drug must "ensur[e] that its warning label is the same as the brand name's." *Mensing* at 2574 n.1.

**B.  Regulatory History of Defendants' Amiodarone.**

Amiodarone is a prescription pharmaceutical indicated for the treatment of life-threatening recurrent ventricular arrhythmias (recurrent ventricular fibrillation (VF) and recurrent hemodynamically unstable ventricular tachycardia (VT)) when other treatments are ineffective or have not been tolerated. Amiodarone was first manufactured and sold by Wyeth Pharmaceuticals, Inc. under the brand name Cordarone® in 1985,[1] and later by other companies under the names Nexterone®, Pacerone®, and generic amiodarone hydrochloride. Plaintiff alleges that Ms. Church "took Amiodarone Hydrochloride 200 mg manufactured by Defendant Eon from at least January 2013 until sometime in December 2013," and "Amiodarone 400 mg tablet" manufactured by Defendant Taro Pharmaceutical in December 2013. (Compl. ¶ 25-26.)

Eon Labs Manufacturing, Inc. n/k/a Eon Labs, Inc. first obtained ANDA approval to manufacture generic amiodarone in the 200 mg tablet form on December 23, 1998.[2] In order to

---

[1] NDA No. 018972.

[2] Information pertaining to ANDA No. 75-315 may be found on the FDA website at http://www.accessdata.fda.gov/scripts/cder/drugsatfda/index.cfm?fuseaction=Search.DrugDetails (last viewed on

manufacture generic amiodarone, Eon was required to and did first submit an ANDA (No. 75-315) for its product to FDA, which included a demonstration of both bioequivalence to Cordarone® and proposed labeling that was required to be substantially identical to Cordarone's® labeling. *See* 21 U.S.C. § 355(j)(2)(A).[3] Eon subsequently obtained approval to manufacture a 400 mg amiodarone tablet through a Supplemental ANDA.[4]

While reviewing the ANDAs and deciding whether to grant approval, FDA reviewed and approved the proposed labeling for Eon's amiodarone, which was determined to be identical in all material respects to Cordarone®. After Eon's amiodarone was approved by FDA, Eon and later Sandoz were required by federal law to keep the labeling and design consistent with the approved labeling and design for the equivalent RLDs. *See Mensing*, 131 S.Ct. at 2575-77.

## II.   PLAINTIFF'S CLAIMS AGAINST THE PHARMACEUTICAL DEFENDANTS

Plaintiff's Complaint asserts twelve causes of action against the Pharmaceutical Defendants, including: (1) Negligence; (2) "Violation of Alabama Extended Manufacturers'

---

December 18, 2014). A true and correct copy of the printout from the FDA website is attached as <u>Exhibit A</u>. A true and correct copy of the FDA approval letter for ANDA No. 75-315 is attached as <u>Exhibit B</u>. It is appropriate for the Court to take judicial notice of the FDA's ANDA approval and other official information available on the FDA website because they are public government records not subject to reasonable dispute. *See* Fed. R. Evid. 201(b)(2); *see also Horne v. Potter,* 392 F. App'x 800, 802 (11th Cir. 2010) (district court properly took judicial notice of public records that were "not subject to reasonable dispute" because they were "capable of accurate and ready determination by resort to sources whose accuracy could not reasonably be questioned"); *Chapman v. Abbott Labs*., 930 F. Supp. 2d 1321, 1323 (M.D. Fla. 2013) (taking judicial notice of FDA prescription drug label and the statements contained therein); *Stengel v. Medtronic, Inc*., 676 F.3d 1159, 1167 (9th Cir. 2012) (FDA records are subject to judicial notice); *Tierney v. AGA Medical Corp*., No. 4:11CV3098, 2011 WL 7400469, at *4 n.10 (D. Neb. Nov. 18, 2011) (documents from FDA website were matters of public record properly considered in motion to dismiss); *In re Zyprexa Prod. Liab. Litig*., 549 F. Supp. 2d 496, 501 (E.D.N.Y. 2008) (taking judicial notice of public documents issued by the FDA); *Lewkut v. Stryker Corp*., 724 F. Supp. 2d 648, 653 (S.D. Tex. 2010) (same); *In re Epogen & Aranesp Off-Label Mktg. & Sales Practices Litig.*, 590 F. Supp. 2d 1282, 1286 (C.D. Cal. 2008) (taking judicial notice of information on FDA website); *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1023 (C.D. Cal. 2008) (same); *Horne v. Novartis Pharm. Corp.*, 541 F. Supp. 2d 768, 776-77 (W.D.N.C. 2008) (same).

[3] Contrary to Plaintiff's allegations, Defendant Sandoz did not introduce generic amiodarone as Geneva Pharmaceuticals pursuant to an ANDA in 2000-2001. (Compl. ¶ 103.) Eon was acquired by Sandoz in 2005 and is a wholly-owned subsidiary of Sandoz. Since receiving FDA approval for its ANDAs to market amiodarone, Eon transferred those ANDA approvals to Sandoz.

[4] A true and correct copy of the FDA approval letter for ANDA No. 75-315/S-004, S-005 is attached as <u>Exhibit C</u>.

Liability Doctrine" ("AELMD"); (3) Breach of Express Warranty; (4) Breach of Implied Warranty; (5) Fraudulent Misrepresentation; (6) Fraudulent Concealment; (7) Negligent Misrepresentation; (8) Fraud and Deceit; (9) Violation of Consumer Protection Laws; (10) Failure to Warn; (11) Negligent Design; and (12) Wrongful Death. (Compl. ¶¶ 157-323.)

The Complaint asserts failure to warn claims against the Pharmaceutical Defendants, including alleging they "manufactured and/or supplied Amiodarone unaccompanied by proper warnings regarding all possible adverse side effects and comparative severity and duration of such adverse effects." (Compl. ¶ 120.) Plaintiff's voluminous Amended Complaint also contains more than twenty-two (22) alleged deficiencies with Defendants' labeling and prescribing information, including claims Defendants "failed to provide adequate warnings about the true safety risks associated with the use of Amiodarone," "failed to provide adequate instructions on how to intervene and/or stabilize a patient who suffers a bleed, injury to liver, skin, neurological effects and other life threatening injuries," and "failed to include a 'BOXED WARNING' about serious bleeding events associated with Amiodarone." (*Id.* ¶ 131.)

In addition, Plaintiff pleads a negligence claim, alleging the Pharmaceutical Defendants "failed to exercise ordinary care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale, testing, quality assurance, quality control, and/or distribution of [amiodarone]." (*Id.* ¶ 159.) Plaintiff also pleads a design defect claim, alleging the Pharmaceutical Defendants sold and distributed amiodarone that was "defective in design" and was "unreasonably dangerous." (*Id.* ¶ 307.) Plaintiff also alleges breach of express and implied warranties, claiming the Pharmaceutical Defendants "expressly warranted that their product was safe and well accepted by users," but "does not conform to these express representations because

their product is not safe and has numerous side effects," and asserting amiodarone was not of merchantable quality or fit for its intended purpose. (*Id.* ¶¶ 193-194; 208.)

Plaintiff also alleges fraud-based claims premised upon allegations the Pharmaceutical Defendants "falsely and fraudulently represented to the medical and healthcare community, and to Ms. Church and her physicians, and/or the FDA, and the public in general that their product had been tested and was found to be safe and/or effective…" (Id. ¶ 216.) Plaintiff also alleges the Pharmaceutical Defendants engaged in "marketing, advertising, selling, distributing, and/or promoting Amiodarone for off-label uses." (Compl. ¶ 224.) Plaintiff has pled consumer protection claims as well, and also alleges that Defendants' amiodarone caused Plaintiff's decedent's death.  (*Id*. ¶ 16.) Eon and Sandoz deny all of Plaintiff's claims in their entirety.

## **ARGUMENT**

### I.   **PLAINTIFF'S CLAIMS ARE ALL PREEMPTED BY FEDERAL LAW PURSUANT TO** *BARTLETT* **AND** *MENSING.*

Plaintiff's claims against Eon and Sandoz are all preempted under the Supreme Court's broad and sweeping decisions in *Bartlett* and *Mensing* or otherwise fail to state a claim upon which relief may be granted. *See Metz*, 525 F. App'x at 893 (dismissing plaintiff's claims against generic drug manufacturer for negligence, strict liability, breach of warranties, misrepresentation, fraud, and negligence per se); *Guarino*, 823 F. Supp. 2d at 1289 (dismissing claims that generic manufacturer's label was "inaccurate, misleading, materially incomplete, false and otherwise inadequate" and that manufacturer failed to send Dear Doctor letters to prescribing physicians under *Mensing*); *Buckman Co. v. Plaintiffs' Legal Committee* 531 U.S. 341 (2001) (finding that state law "fraud on the FDA" claims were impliedly preempted by the Medical Device Amendments to the FDCA). A court may dismiss a complaint on a dispositive issue of law. *Marshall County Bd. of Educ. v. Marshall County Gas Dist*., 992 F.2d 1171, 1174 (11th Cir.

1993). Plaintiff here has alleged claims against the Pharmaceutical Defendants for negligence, violation of Alabama Extended Manufacturers' Liability Doctrine, breach of warranties, failure to warn, and negligent design. These claims are preempted and should be dismissed.

In 2011, the Supreme Court ruled in *Mensing* that state law tort claims attacking the adequacy of warnings provided by generic manufacturers about their ANDA-approved products are preempted by federal law. The lawsuits in *Mensing* "involve[d] state tort-law claims based on certain drug manufacturers' alleged failure to provide adequate warning labels for generic metoclopramide." *Mensing*, 131 S. Ct. at 2572. Faced with the question of "whether federal drug regulations applicable to generic drug manufacturers directly conflict with, and thus pre-empt, these state-law claims," the Supreme Court held unequivocally and broadly that they do. *Id.*

All of the justices acknowledged the broad, outcome-determinative impact of the Court's ruling. The majority opinion recognized the decision's dispositive impact on all products liability claims against generic manufacturers, holding "because pharmacists, acting in full accord with state law, substituted generic metoclopramide [for the branded product] . . . *federal law pre-empts these lawsuits*." *Id.* at 2581 (emphasis added). The four dissenting justices also emphasized the fatal impact of the decision on a plaintiff's cases against generic drug manufacturers, stating "[i]f [a consumer] takes a generic drug, as occurs 75 percent of the time, she now has **no right to sue**." *Id.* at 2592 (Sotomayor, J., dissenting, joined by Breyer, Ginsburg, & Kagan, JJ.) (emphasis added).

The overwhelming majority of state and federal courts have subsequently recognized the plain impact of *Mensing*: no state law tort claims attacking a generic drug manufacturer's warnings, representations, or disclosures about the risks of their generic drug products can

survive federal preemption.[5] The Supreme Court also reaffirmed *Mensing* in *Bartlett*, in which it recognized impossibility preemption applies not only to warning-based claims but also design defect claims or claims alleging a duty to withdraw a product from the market.

In *Bartlett*, the Supreme Court reversed a multi-million dollar jury award of liability on a patient's design-defect strict-liability claim against a manufacturer of the generic drug sulindac. *Bartlett*, 133 S. Ct. at 2470. The Supreme Court noted that state law imposed a duty on drug manufacturers to ensure that a drug was not unreasonably dangerous, which could be satisfied by changing either the drug's design or its labeling. *Id.* at 2475. When faced with such a duty, the Supreme Court reasoned it was impossible for a generic drug manufacturer to take such remedial steps in light of federal law's requirement that a generic drug be chemically equivalent and bioequivalent to the brand-name drug on which it is based. *Id.* ("FDCA requires a generic drug to have the same active ingredients, route of administration, dosage form, strength, and labeling as the brand-name drug on which it is based.").

Because it was legally impossible for the drug manufacturer to redesign its drug into another composition, the Supreme Court reasoned the only way for the manufacturer to escape liability was to strengthen its warnings, which was prohibited under federal law as explained in *Mensing*. *Id.* at 2475-76. The Court therefore held state-law design-defect claims "that place a duty on manufacturers to render a drug safer by either altering its composition or altering its labeling are in conflict with federal laws that prohibit generic drug manufacturers from

---

[5] *See, e.g., Guarino v. Wyeth*, 719 F.3d 1245 (11th Cir. 2013) (holding all state warning claims are preempted); *Johnson v. Teva Pharm. USA, Inc.*, 758 F.3d 605 (5th Cir. 2014) (affirming dismissal of all claims including failure to warn, design defect, and stop-selling as preempted); *In re Darvocet, Darvon & Propoxyphene Products Liab. Litig.*, 756 F.3d 917 (6th Cir. 2014) (affirming dismissal of all claims against generic defendants); *Eckhardt v. Qualitest Pharm., Inc.*, 751 F.3d 674 (5th Cir. 2014) (same); *In re Fosamax Products Liab. Litig.*, 751 F.3d 150 (3rd Cir. 2014) (same); *Lasley & Del Valle v. Pfizer, Inc.*, 750 F.3d 470 (5th Cir. 2014) (affirming all claims dismissed as preempted); *Drager v. PLIVA USA, Inc.*, 741 F.3d 470 (4th Cir. 2014) (same); *Moretti v. Mutual Pharm. Co.*, 518 Fed. Appx. 486 (8th Cir. 2013) (affirming dismissal of warning claims as preempted).

unilaterally altering drug composition or labeling. *Id.* As a result, over 100 federal and state courts nationwide have dismissed virtually all types of products liability and tort claims pled against generic manufacturers as preempted.

Most recently, several judges in the Northern District of Alabama have granted motions to dismiss in two other cases involving generic amiodarone with very similar allegations. *See Stephens v. Teva Pharmaceuticals Inc., et al.*, 5:13-cv-01357-IPJ (N.D. Ala. Oct. 1, 2014); *Allain v. Wyeth Pharmaceuticals Inc., et al.*, 2:14-cv-00280-KOB (N.D. Ala. Jun. 29, 2015). In both cases, the plaintiffs alleged that a decedent did not receive adequate warnings of side effects from amiodarone and was not aware that his use of the medication was for an off-label use. Citing *Mensing* and *Bartlett*, the *Stephens* Court held that the Alabama Extended Manufacturers' Liability Doctrine ("AEMLD") claim (including design defect) and failure to warn claims were "wholly preempted by federal law," and plaintiffs could not "sue a generic manufacturer on a failure to warn claim or a state law design defect claim that turns on the adequacy of a drug's warnings." *Stephens*, 5:13-cv-01357-IPJ (N.D. Ala. Oct. 1, 2014) at 8. Similarly, the *Allain* court held that "*Mensing* squarely precludes any suit against [generic defendants] based on the alleged inadequacy of amiodarone's warnings." In another similar amiodarone case, the District Court for the Northern District of Georgia granted a motion to dismiss various allegations similar to those pled here. *See Connolly v. Sandoz Pharmaceuticals Corp., et al.,* 2:14-cv-152-WCO (N.D. Ga. Dec. 23, 2014) (allegations of "deception, concealment, and fraudulent marketing and promotion" of amiodarone for off-label uses were "in essence… allegations that Defendants' alleged promotion resulted in failure to properly warn" and were preempted by federal law.)

As in *Stephens*, *Allain*, and *Connolly*, despite Plaintiff's attempts to characterize her claims otherwise, the majority of Plaintiff's claims are classic "failure to warn" allegations.

Plaintiff's allegations are also purely conclusory, such as claims that the Pharmaceutical Defendants made "false and misleading misrepresentations or omissions of material fact relating to the safety of their product." (Compl. ¶ 282.) *See Stephens*, 5:13-cv-01357-IPJ (N.D. Ala. Oct. 1, 2014). n.4 ("While plaintiffs' assert that amiodarone was defective and that defendants failed to provide adequate and required warnings, the plaintiffs provide no support for such statements at all…[n]o specific reasons, or medical articles, or specific studies, are referenced.") Because the claims pled here are virtually identical to this recent precedent, the same reasoning should apply and this Court should dismiss these claims as preempted as well.

In this case, Plaintiff's Complaint alleges numerous claims for failure to warn, design defect, strict liability, negligence, and breach of warranty. As in *Bartlett*, *Mensing*, and the many cases following them, including the recent decision in *Stephens, Allain* and *Connolly*, all such claims must be dismissed because they are preempted by conflicting federal requirements imposed upon generic drug manufacturers. *See, e.g.*, *Mensing*, 562 F. Supp. 2d at 1061 n.6 ("[A]ll of Plaintiff's claims are encompassed by the Court's preemption analysis."); *see also Guarino*, 719 F.3d at 1247 (affirming grant of summary judgment on claims of negligence, strict liability, breach of warranty, misrepresentation and fraud, and negligence per se in which plaintiffs alleged defendants failed to adequately warn medical providers of the risks associated with long-term use of generic metoclopramide). Regardless of the language utilized, Plaintiff's remaining claims at their root allege that Eon and Sandoz should have unilaterally altered the design of their amiodarone product or the warnings, representations and disclosures they made about their product, even though federal law prohibited Eon and Sandoz from doing so. All of Plaintiff's claims are preempted, for the reasons already stated and as set forth more fully below.

**A.  Plaintiff's Negligence Claims Are Preempted.**

Plaintiff's Complaint alleges that Eon and Sandoz negligently "failed to exercise ordinary care in the designing, researching, manufacturing…of certain products," failed to warn Ms. Church, her physicians, other consumers, and other medical providers of dangers of amiodarone, and failed to adequately test and study amiodarone. (See Compl. ¶¶ 131; 137; 159.) Plaintiff also alleges that Defendants "negligently misrepresented their product's high risk of unreasonable, dangerous side effects." (*Id.* ¶ 241.) Plaintiff's claims at their root attack the design or warnings associated with Eon's and Sandoz' amiodarone. Thus, such claims are preempted by federal law because they seek to impose a duty that conflicts with federal law, for the reasons previously articulated. Numerous courts have rejected blanket negligence claims as preempted for the same reasons that failure to warn and design defect claims are preempted, and this court should do the same. *See, e.g.*, *Guarino*, 823 F. Supp. 2d at 1292, *reconsideration denied*, 8:10-CV-2885-T-30TGW, 2012 WL 28810 (M.D. Fla. Jan. 5, 2012) (dismissing negligence claims as preempted), *aff'd* 719 F.3d 1245 (11th Cir. 2013); *Drager*, 741 F.3d at 476-77; *Brown v. Actavis Elizabeth, LLC*, No. 10–11, 2011 WL 5826022 (E.D. La. Aug. 10, 2011) (same); *Henderson v. Sun Pharmaceutical Ind., Ltd.,* 809 F. Supp. 2d 1373 (N.D.Ga. 2011) (same).

**B.  Plaintiff's AELMD Claim Is Preempted.**

Plaintiff alleges that Eon and Sandoz violated the "Alabama Extended Manufacturers Liability Doctrine" ("AELMD") because "the Amiodarone designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by the Defendants was defective in design and/or formulation," and was "unreasonably dangerous for its normal, intended use." ." (Compl. ¶¶ 173-180.) Plaintiff also alleges a violation of the AELMD because the amiodarone was "defective due to inadequate warnings or instructions." (Id. ¶ 185.) This claim is preempted

13

for the same reason other design defect claims are preempted - because it seeks to impose a duty upon Defendants to take actions that federal law prohibits. Federal statutes and regulations forbid Eon and Sandoz from manufacturing or selling a generic drug that is not bioequivalent to the RLD. *See* 21 U.S.C. § 355(j)(2)(A) (requiring generic drugs to be the "same" as brand-name drugs); *see also Schrock v. Wyeth, Inc.,* 727 F.3d at 1273, 1288 (10th Cir. 2013) ("Qualitest could not have altered the composition of the [drug] it manufactured without violating federal law"); *In re Pamidronate Products Liab. Litig.,* 842 F. Supp. 2d 479, 484 (E.D.N.Y. 2012) ("[T]he 'federal duty of "sameness,"' also applies in the context of generic drug design, and federal law preempts state laws imposing a duty to change a drug's design on generic drug manufacturers.") (citing *Mensing*, 131 S. Ct. at 2575). Altering the design of a generic drug in a way that varies its therapeutic effect from the RLD, even to make it safer, violates federal law.

To the extent Plaintiff alleges that Defendants' amiodarone was "manufactured defectively," this claim additionally fails because Plaintiff has provided no factual support whatsoever for such a claim. (*Id.* ¶ 181.) Plaintiff has not and cannot identify any purported deviation from product specifications in the Sandoz or Eon amiodarone she allegedly received, nor has she or can she specify how any such deviation caused any injury. Plaintiff cannot attach a conclusory "manufacturing defect" label to a design defect claim in a blatant and futile attempt to avoid preemption under *Bartlett* and *Mensing*.

### C.  Plaintiff's Breach of Warranty Claims Are Preempted.

Plaintiff alleges Eon and Sandoz breached express warranties that "Amiodarone was safe and well accepted by users," and "was safe and fit for use for the purposes intended, that it was of merchantable quality, that it did not produce any dangerous side effects, that the side effects it did produce were accurately reflected in the warnings and that it was adequately tested and fit for

its intended use." (Compl. ¶¶ 193; 200.) Plaintiff also alleges that Eon and Sandoz breached implied warranties that amiodarone was "of merchantable quality and safe and fit for the ordinary purpose for which said product was used." (*Id*. ¶ 207.) Plaintiff's breach of warranties claims are preempted as a matter of law because both express and implied warranty claims necessarily implicate the sufficiency of the warning labeling of the product at issue and are therefore preempted under *Mensing*. As the Tenth Circuit held in *Schrock*, breach of warranty claims are "preempted to the extent they rest on inadequate labeling as broadly defined by the FDA." *Schrock,* 727 F.3d at 1288. Further, claims a product is not merchantable or fit for a particular use, or is unreasonably dangerous, are also preempted under *Bartlett* because Eon and Sandoz could not have altered the design of their products "without violating federal law." *Id*. (affirming dismissal of breach of warranty claims as preempted). Indeed, numerous circuit courts have applied *Mensing* and *Bartlett* to affirm the dismissal of breach of warranty claims.[6] There is simply no basis to hold otherwise here, and thus Plaintiff's breach of warranties claims are preempted and should be dismissed.

## D. Plaintiff's Failure to Warn Claim Is Preempted.

In The Complaint, Plaintiff alleges Eon "failed to provide adequate warnings" to Plaintiff's decedent and her prescribing physicians. (Compl. ¶ 141.) This claim necessarily argues that Eon's and Sandoz' labeling should have contained different or additional warnings, which is precisely the type of claim against generic drug manufacturers that the Supreme Court held preempted in *Mensing*. Finding compliance with both state tort law and federal law governing generic drug labeling to be impossible, the Supreme Court held:

---

[6] *See also, e.g., Johnson,* 758 F.3d at 614 (affirming dismissal of breach of warranty claim as preempted); *In re Darvocet, Darvon & Propoxyphene Products Liab. Litig.,* 756 F.3d at 935 (breach of express and implied warranty claims preempted); *Eckhardt*, 751 F.3d at 680 (affirming dismissal of breach of warranty claims).

> [S]tate law imposed on the [generic] Manufacturers a duty to attach a safer label to their generic metoclopramide. Federal law, however, demanded that generic drug labels be the same at all times as the corresponding brand-name labels. Thus, it was impossible for the [generic] Manufacturers to comply with both their state-law duty to change the label and their federal law duty to keep the label the same.

*Mensing*, 131 S. Ct. at 2578.

*Mensing* unequivocally held that state law claims based on alleged failure to provide adequate warnings, such as those asserted by Plaintiff here regarding Eon's and Sandoz' amiodarone, directly conflict with and are preempted by federal statutes and regulations ***forbidding*** generic drug manufacturers from unilaterally altering or strengthening the warnings accompanying their drugs. 131 S. Ct. at 2577-81. The overwhelming majority of state and federal courts have recognized the plain impact of *Mensing*: no state law tort claims attacking a generic drug manufacturer's warnings, representations, or disclosures about the risks of their generic drug products can survive federal preemption. *See e.g., Schrock*, 727 F.3d at 1289-90 (breach of warranty claims based on failure to warn are preempted); *Johnson*, 758 F.3d at 611 (all failure to warn based claims preempted); *Guarino*, 719 F.3d at 1249 (same).[7]

### E. Plaintiff's Design Defect Claim Is Preempted.

Plaintiff also alleges in a conclusory fashion that Eon's and Sandoz' amiodarone was defective in its design or manufacture.[8] (Compl. ¶ 304-313). As previously noted, this claim is squarely preempted by *Bartlett* because, as a generic drug receiving FDA's ANDA approval, Eon's and Sandoz' amiodarone was required by federal law to be the "same as" its branded or RLD counterparts. *See* 21 U.S.C. § 355(j)(2)(A). The federal duty of "sameness" that led to impossibility preemption recognized in *Bartlett* (and *Mensing*) applies equally to a generic

---

[7] *See, e.g In re Darvocet, Darvon & Propoxyphene Prod. Liab. Litig.*, 756 F.3d at 941; *Eckhardt*, 751 F.3d at 682; *In re Fosamax Prod. Liab. Litig.*, 751 F.3d at 165; *Lashley & Del Valle*, 750 F.3d at 476; *Drager*, 741 F.3d at 479.

[8] As stated above, to the extent Plaintiff intended to allege a manufacturing defect claim, this claim additionally fails because he has provided no factual support whatsoever for such a claim.

drug's label ***and*** its design, and therefore preemption prohibits claims attacking the design of generic drug products as well.

To gain and keep ANDA approval, generic drug manufacturers must show their products are bioequivalent to their branded or RLD counterparts. *See* 21 U.S.C. § 355(j)(2)(A)(i)-(iii) (ANDA applicants must demonstrate a generic drug contains the same active ingredient(s); employs the same route of administration; presents the same dosage form; and exhibits the same strength as its brand name counterpart). Federal law explicitly requires a generic drug to be "identical [to its branded equivalent] in active ingredients, safety, and efficacy," just as each generic drug must "ensur[e] that its warning label is the same as the brand name's." *Mensing*, 131 S. Ct. at 2574 n.1; *see also Bartlett*, 133 S. Ct. at 2475.

The vast majority of courts to examine this issue have similarly found state law design defect claims preempted.[9] As the Fifth Circuit recently held, a plaintiff "simply cannot escape *Bartlett's* application." *Eckhardt*, 751 F.3d at 679. Thus, for the same reasons the Supreme Court found state-law design defect claims against generic drug manufacturers to be preempted by federal law in *Bartlett,* because it was impossible for a manufacturer to comply with both state and federal law, Plaintiff's state-law design defect claims are also preempted.

For all of the foregoing reasons, Plaintiff's claims against Eon and Sandoz are preempted and should be dismissed. Even if they were not preempted, these claims are also subject to dismissal because they are insufficiently pled pursuant to Fed. R. Civ. P. 8(a)(2) and 9(b).

---

[9] *See e.g. Johnson*, 758 F.3d at 612-13 (design-defect claim preempted pursuant to *Bartlett*); *In re Fosamax,* 751 F.3d at 165 ("*Mensing* and *Bartlett* recognize that manufacturers have no control over the design or labeling of generic drugs."); *Drager*, 741 F.3d at 476 (design defect claims preempted); *Strayhorn v. Wyeth Pharm. Inc*, 737 F.3d 378, 397 (6th Cir. 2013) (design defect claims preempted under *Bartlett*).

## II.     PLAINTIFF'S CLAIMS ARE ALSO INSUFFICIENTLY PLED.

To survive a motion to dismiss, Plaintiff's Complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* The Court need not accept legal conclusions as true, however, even when stated as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8(a)(2) requires a Complaint to contain a "plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554 (2007). To avoid dismissal, a plaintiff must "raise a right to relief above the speculative level" by pleading "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570. While Rule 8(a)(2) does not require detailed factual support for the allegations asserted, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Thus, dismissal is warranted if a complaint merely contains "a formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, or "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. However, even where facts are pled, those factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Twombly*, 550 U.S. at 570.

The Supreme Court has articulated a two-pronged approach to decide whether a complaint's factual allegations are sufficient to survive a motion to dismiss under Fed R. Civ. P. 8(a)(2). *See Iqbal*, 129 S.Ct. at 1950. The first step is to identify and set aside any conclusory allegations. *Id.* at 1949-50. Although a court considering a motion to dismiss must construe facts alleged in the complaint in favor of the non-moving party, it is not required to accept as true

mere legal conclusions disguised as factual allegations. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 1949. The second step is to determine whether the complaint pleads a claim to relief that is plausible on its face once the conclusory allegations are stripped away. *Id.* at 1950. This plausibility analysis requires more than the sheer possibility that a defendant acted unlawfully. *Id*. at 1949.

As the Supreme Court explained, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Twombly*, 550 U.S. at 555 n.3. Accordingly, courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and pleadings that lack a "statement of circumstances, occurrences, and events in support of the claim presented" should be dismissed. *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555.

Plaintiff's Complaint fails to meet these basic pleading requirements of Rule 8 and instead contains only conclusory allegations and legal recitations, devoid of factual support for the claims against Eon or Sandoz. Thus, pursuant to Rule 12(b)(6) and 8(a)(2), this Court should dismiss Plaintiff's Complaint because it fails to state a claim for relief as to Sandoz or Eon that is plausible on its face.

### A. Plaintiff's Claims Fail to Differentiate Between the Defendants.

Plaintiff's Complaint completely fails to separate or distinguish Plaintiff's allegations against Eon and Sandoz from the allegations against the "Pharmaceutical Defendants" as a whole. When two or more defendants are named in a complaint, plaintiffs must "differentiate their allegations" to give proper notice as to the allegations applicable to each defendant. *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007). Failure to separate the allegations as to

19

each defendant requires dismissal. *Pietrangelo v. NUI Corp.*, No. Civ. 04-3223, 2005 WL 1703200, at *10 (D.N.J. July 20, 2005) ("the [c]omplaint fails to satisfy even the liberal notice pleading standard of Rule 8(a) because [p]laintiff fails to differentiate between the defendants").

Moreover, *Twombly* requires that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Thus, in addressing a motion to dismiss, courts should consider whether the factual allegations in the complaint are facially plausible. As the Supreme Court elaborated in *Iqbal*, facial plausibility requires plaintiffs to plead ***specific*** facts implicating ***each named defendant***:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that **the defendant** is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal,* 129 S.Ct. at 1949 (citations omitted; emphasis added).

Here, Plaintiff's Complaint asserts 11 causes of action against "the Pharmaceutical Defendants," two causes of action against "All Defendants," as well as three causes of action against decedent's healthcare providers. However, Plaintiff never once specifically names Eon or Sandoz in any of the counts or attributes any specific alleged misconduct to Eon or Sandoz. Plaintiff's Complaint also completely fails to differentiate among the "Pharmaceutical Defendants" in the allegations contained in each count. In short, Plaintiff does not differentiate who among the Defendants purportedly did what.

Plaintiff's global and sweeping allegations in all 11 "Causes of Action" directed at "the Pharmaceutical Defendants" are set forth without any factual specificity whatsoever between the various defendants, and are broadly plead against all "Pharmaceutical Defendants." The Complaint asserts the same boilerplate claims against all of the Pharmaceutical Defendants *en*

*masse*, and fails to delineate the purported misconduct attributable to each Defendant. Rather, Plaintiff simply makes wholesale, unsupported allegations without providing any notice as to which facts or legal theories apply to which Defendants. Thus, Plaintiff fails to satisfy the pleading standards set forth in *Twombly* and *Iqbal*. Accordingly, Plaintiff's claims against Eon and Sandoz should be dismissed in their entirety.

### B.  Plaintiff's Fraud Claims Are Not Pled with Particularity as Required by Rule 9(b).

Plaintiff's fraud-based claims fall woefully short of satisfying the heightened pleading requirements of Rule 9(b), which requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). [10] Alabama law provides that "[m]isrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud." Ala. Code 1975 § 6–5–101. A claim of fraudulent misrepresentation comprises the following elements: "(1) a false representation (2) concerning a material fact (3) relied upon by the plaintiff (4) who was damaged as a proximate result." *Wyeth, Inc. v. Weeks*, No. 1101397, 2014 WL 4055813, at *3 (Ala. Aug. 15, 2014); *Fisher v. Comer Plantation*, 772 So.2d 455, 463 (Ala. 2000) (quoting *Baker v. Bennett*, 603 So.2d 928, 935 (Ala. 1992)).

In order to state a claim of fraud with sufficient particularity pursuant to Rule 9(b), the Eleventh Circuit requires a plaintiff to allege: "'(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the

---

[10] Rule 9(b)'s heightened pleading standard applies to the following causes of action as they are identified in the Complaint: Fifth Cause of Action ("Fraudulent Misrepresentation"), Sixth Cause of Action ("Fraudulent Concealment"), Eighth Cause of Action ("Fraud and Deceit"). It also applies to the First Cause of Action ("Negligence") which alleges that the pharmaceutical defendants "engaged in deception, fraud, false pretenses, false promises or misrepresentations, and/or perpetrated the knowing concealment, suppression and/or omission of material facts with the intent that consumers," and the Ninth Cause of Action ("Violation of Consumer Protection Laws") and Twelfth Cause of Action ("Wrongful Death") which allege Defendants u were engaging in "fraudulent" conduct. *See* Compl. ¶ 163; 281; 319-320. Plaintiff has failed to meet this standard for any of these claims.

content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud.'" *Houston v. Bayer Healthcare Pharm., Inc*., No. 2:14-CV-00035-WMA, 2014 WL 1330906 (N.D. Ala. Mar. 28, 2014) (quoting *Am. Dental Ass'n v. Cigna Corp*., 605 F.3d 1283, 1291 (11th Cir. 2010) (citation omitted)). When read together, Rules 9(b) and 12(b)(6) require a plaintiff to allege each necessary element of a fraud or misrepresentation claim in order to survive a motion to dismiss.

Here, Plaintiff's Complaint falls far short of the particularity required to state a viable fraud claim. Plaintiff's vague blanket assertions that the "Pharmaceutical Defendants" "falsely and fraudulently represented" that amiodarone was safe and effective are insufficient to meet the pleading requirements of Rule 9(b). Further, Plaintiff's Complaint fails on its face because it does not even attempt to state the time, place or context of any alleged fraudulent acts or omissions by Eon or Sandoz. Indeed, neither Eon nor Sandoz are mentioned **one single time** throughout any of Plaintiff's fraud causes of action. Instead, Plaintiff vaguely alleges that Sandoz "fraudulently misrepresented and suppressed material facts concerning usage of amiodarone on a long-term basis, appropriate dosages, and the effects of taking Amiodarone in combination with other medications" and that Eon "misrepresented Amiodarone's indications and usage, efficacy, risks, and benefits." (Compl. ¶ 108; 113.) Plaintiff has completely neglected to identify the person(s) who purportedly made the alleged fraudulent misrepresentations or who purportedly engaged in fraudulent conduct on behalf of Eon or Sandoz. Plaintiff has further failed to identify or describe <u>any</u> fraudulent representations or any examples of "reports, press releases, advertising campaigns, television commercials, print ads, magazine ads, billboards, and all other commercial media" purportedly disseminated by Eon or Sandoz. (Compl. ¶ 250.)

Plaintiff's allegations as pled amount to mere conclusory statements, unsupported by fact, and entirely devoid of the requisite "particularity [of] the circumstances constituting fraud." Fed. R. Civ. P. 9(b). In sum, there are no factual allegations anywhere in the Complaint specifying any alleged fraudulent activity by Eon or Sandoz, as required to support a fraud claim. Plaintiff's claims for Fraudulent Misrepresentation, Fraudulent Concealment, Fraud and Deceit, , and the fraud-based claims in Plaintiff's causes of action for Negligence, Violation of Consumer Protection Laws, and Wrongful Death fail to comport with the heightened pleading with particularity requirements of Rule 9(b), and should be dismissed.

## CONCLUSION

For the foregoing reasons, this Court should dismiss all of Plaintiff's claims against Eon and Sandoz because they are preempted by federal law and no further amendment will cure the preemption of the claims against Eon and Sandoz. In addition, Plaintiff's claims are also subject to dismissal as insufficiently pled. Defendants therefore respectfully request that the Court grant their Motion to Dismiss and dismiss Plaintiff's claims against them *with prejudice* for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6).

Dated this 20th day of August, 2015.

/s/ Brian P. Kappel
Harlan I. Prater, IV (ASB-7485-T62H)
hprater@lightfootlaw.com
Brian P. Kappel (ASB-1831-B44K)
bkappel@lightfootlaw.com
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 20th Street North
Birmingham, Alabama 35203-3200
(205) 581-0700 (telephone)
(205) 581-0799 (facsimile)

Lori G. Cohen*
CohenL@gtlaw.com

Sara Thompson*
ThompsonS@gtlaw.com
GREENBERG TRAURIG, LLP
3333 Piedmont Road NE, Suite 2500
Atlanta, Georgia 30305
(678) 553-2392 (telephone)
(678) 553-2393 (facsimile)
*Pro Hac Vice applications to be submitted
Counsel for Defendants Eon Labs, Inc. and
Sandoz Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of August, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

Jamie A. Johnston
JAMIE A. JOHNSTON, PC
401 Madison Avenue
Montgomery, AL  36104
*Attorney for Plaintiff*

Alan T. Hargrove, Jr.
RUSHSTON STAKELY
JOHNSTON & GARRETT PA
P.O. Box 270
Montgomery, AL  36101

Christopher G. Campbell
DLA PIPER LLP
1201 West Peachtree Street, Suite 2800
Atlanta, GA  30309
*Attorneys for Wyeth, LLC, Wyeth*
*Pharmaceuticals, Inc., and Pfizer, Inc.*

Walter J. Price III
HUIE, FERNAMBUCQ & STEWART
2801 Highway 280 South, Suite 200
Birmingham, AL  35223

Mark C. Hegarty
SHOOK, HARDY & BACON, LLP
2555 Grand Boulevard
Kansas City, MO  64108
*Attorneys for Upsher-Smith Laboratories,*
*Inc.*

I further certify that on this 20th day of August, 2015, I served a true and correct copy of the foregoing by United States Mail, postage prepaid and properly addressed to the following:

River Region Cardiology Associates
114 Mitylene Park Drive
Montgomery, Al 36117

Dr. Pervaiz A. Malik
114 Mitylene Park Drive
Montgomery, AL 36117

Taro Pharmaceuticals USA, Inc.
3 Skyline Drive
Ossining, NY 10562

Respectfully submitted,

/s/ Brian P. Kappel
Counsel for Defendants Eon Labs, Inc. and
Sandoz Inc.